UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAFELE WALKER, on behalf of himself and on behalf of all other similarly-situated persons,

Plaintiff,

v.

VLC NOLITA LLC, VLC UNION SQUARE LLC, VLC UPPER WEST LLC, VLC WEST VILLAGE LLC, ANDRES MIER Y TERAN, ALFRED MIER Y TERAN and CARLOS MIER Y TERAN,

Defendants.

Civil Action No. 12 Civ. 3712 (RJS)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND AUTHORIZATION TO SEND NOTICE OF THIS ACTION**

THOMPSON WIGDOR LLP

85 Fifth Avenue
New York, New York 10003
Phone: (212) 257-6800
Facsimile: (212) 257-6845

Attorneys for Plaintiff

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........ ii

**PRELIMINARY STATEMENT** ........ 1

**STATEMENT OF FACTS** ........ 1

**Plaintiff Kafele Walker** ........ 2

**Other Similarly Situated Individuals** ........ 2

**Plaintiff's Job Duties** ........ 2

**Defendants Operated The Four Vive La Crepe Locations As A Single Enterprise** ........ 3

**Plaintiff And Other Crepe Makers Were Not Lawfully Compensated For Their Overtime Work** ........ 3

**Defendants' Common Policy Or Plan Violated The FLSA** ........ 7

**ARGUMENT** ........ 8

**I. CONDITIONAL CERTIFICATION OF THE FLSA COLLECTIVE IS APPROPRIATE** ........ 8

**A. The FLSA's Opt-In Requirements** ........ 8

**B. The Two Phase Certification Process For FLSA Collective Actions** ........ 9

**C. Plaintiff Has Made The Required Showing That He Is Similarly Situated To Members Of The FLSA Collective** ........ 11

**II. COURT-AUTHORIZED NOTICE IS APPROPRIATE IN THIS CASE** ........ 12

**III. EXPEDITED DISCLOSURE OF NAMES AND CONTACT INFORMATION IS APPROPRIATE IN THIS CASE** ........ 14

**CONCLUSION** ........ 15

# TABLE OF AUTHORITIES

**CASES**

Braunstein v. E. Photographic Laboratories, Inc.,
600 F.2d 335 (2d Cir. 1978) .......... 13

Brock v. Superior Care, Inc.,
840 F.2d 1054 (2d Cir. 1988) .......... 14

Chowdhury v. Duane Reade, Inc.,
No. 06 CIV 2295 (GEL), 2007 WL 2873929 (S.D.N.Y. October 2, 2007) .......... 11

Cunningham v. Elec. Data Systems Corp.,
No. 06 CIV 3530 (RJH), 2010 WL 5076703 (S.D.N.Y. December 13, 2010) .......... 9, 10, 11

Davis v. Abercrombie & Fitch,
No. 08 CIV 1859 (PKC), 2008 WL 4702840 (S.D.N.Y. October 23, 2008) .......... 11, 14

Foster v. Food Emporium,
No. 99 CIV 3860 CM, 2000 WL 1737858 (S.D.N.Y. April 26, 2000) .......... 9, 13

Hallissey v. Am. On-line, Inc.,
No. 99 Civ. 3785, 2008 WL 465112 (S.D.N.Y. February 19, 2008) .......... 11

Hoffman v. Sbarro,
982 F. Supp. 249 (S.D.N.Y. 1997) .......... 8

Hoffman-LaRoche, Inc. v. Sperling,
493 U.S. 165 (1989) .......... 8, 9, 13, 14

Lee v. ABC Carpet & Home,
236 F.R.D. 193 (S.D.N.Y. 2006) .......... 10

Lynch v. United Services Auto. Ass'n,
491 F. Supp. 2d 357 (S.D.N.Y. 2007) .......... 9, 10, 13, 14

McBeth v. Gabrielli Truck Sales, Ltd.,
No. 09 CV 04112 (LDW), 2011 WL 338123 (E.D.N.Y. February 3, 2011) .......... 15

Mentor v. Imperial Parking Systems, Inc.,
246 F.R.D. 178 (S.D.N.Y.2007) .......... 10

Morales v. Plantworks, Inc.,
No. 05 Civ. 2349 (DC), 2006 WL 278154 (S.D.N.Y. February 2, 2006) .......... 10

Myers v. Hertz Corp.,
624 F.3d 537 (2d Cir. 2010) ....................9, 10, 11, 13

Spicer v. Pier Sixty LLC,
269 F.R.D. 321 (S.D.N.Y. 2010) ....................10

**STATUTES and REGULATIONS**

29 U.S.C. § 216(b) .................... *passim*

29 U.S.C. § 255(a) ....................14

29 U.S.C. § 626(b) ....................8

Fed. R. Civ. P. 23 ....................8

## PRELIMINARY STATEMENT

Plaintiff Kafele Walker ("Plaintiff") seeks conditional certification of a collective group of current and former employees of VLC Nolita LLC, VLC Union Square LLC, VLC Upper West LLC, VLC West Village LLC (together, the "Corporate Defendants") who worked as Crepe Makers and/or in similar positions (hereinafter "Crepe Makers") that are/were not paid overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek (the "FLSA Collective") in violation of the Fair Labor Standards Act, for the period of May 9, 2009 to the date of the final disposition of this action (the "FLSA Collective Period"). As explained in detail below, conditional certification of this collective action, as well as the other relief sought in this motion, is appropriate because Plaintiff has made the required "modest factual showing" that members of the putative FLSA Collective who worked in the four New York City Vive La Crepe restaurants were subjected to the Corporate Defendants' common policies and/or practices of not paying Crepe Makers overtime at the statutorily prescribed rate for all hours worked in excess of 40 hours per week.

## STATEMENT OF FACTS

On May 9, 2012, Plaintiff filed the Complaint in this action alleging, *inter alia*, that Defendants violated the FLSA by, *inter alia*, failing to pay overtime compensation for all hours worked in excess of 40 hours per week to Plaintiff and all members of the putative FLSA Collective. (Datoo Dec. Ex. 1, ¶¶ 1-5).[1] Plaintiff alleges that the FLSA violations were willful and were perpetrated through common company-wide policies and/or plans that violated the law, entitling him and others who would comprise the FLSA Collective to recover the unlawfully

---

[1] The Declaration of Shaffin A. Datoo, which is submitted herewith, is referred to herein as "(Datoo Dec.)."

withheld overtime pay for the period of May 9, 2009 to the present, and other related damages, penalties, and fees. (Datoo Dec. Ex. 1, ¶¶ 35-36).

**Plaintiff Kafele Walker**

Plaintiff is, and at all relevant times was, a resident of Queens, New York, and was employed by the Corporate Defendants as a Crepe Maker in New York, New York from February 2012 through his May 13, 2012 termination. (Datoo Dec. Ex. 1, ¶ 19; Walker Dec. ¶ 2).[2] This position was FLSA non-exempt and Mr. Walker was paid $8.75 per hour. (Datoo Dec. Ex. 1, ¶ 22; Walker Dec. ¶ 4).

**Other Similarly Situated Individuals**

During the FLSA Collective Period, upon information and belief, approximately ninety (90) employees worked for the Corporate Defendants as Crepe Makers at one of the four Vive La Crepe restaurants located in New York City. (Datoo Dec. ¶ 17; Ex. 1, ¶ 56). As described below, all of these individuals were treated similar to Plaintiff by the Corporate Defendants with respect to their work conditions, including, but not limited to, their primary job duties, the company policies and practices they were expected to follow and their compensation.

**Plaintiff's Job Duties**

Plaintiff's primary job duty as a Crepe Maker was to make crepes for the public. (Datoo Dec. Ex. 1, ¶ 20). Further, Plaintiff and other Crepe Makers were not assigned to work exclusively at one of Defendants' four restaurants, but rather, were assigned to work at multiple Vive La Crepe locations. (Datoo Dec. Ex. 1, ¶ 21; Walker Dec. ¶ 3). For instance, Plaintiff was regularly assigned to work at the Vive La Crepe restaurants located at 189 Columbus Avenue (the "Upper West Side Location") and 300 Bleecker Street (the "Greenwich Village Location").

---

2 The Declaration of Kafele Walker, which is submitted herewith, is referred to herein as "(Walker Dec.)."

(Walker Dec. ¶ 3). As such, it was routine for Plaintiff and other Crepe Makers to work at multiple Vive La Crepe locations in the same workweek, and sometimes in the same day. (Datoo Dec. Ex. 1, ¶ 23).

**Defendants Operated The Four Vive La Crepe Locations As A Single Enterprise**

Andres Mier y Teran, Alfred Mier y Teran and Carlos Mier y Teran (the "Individual Defendants") are brothers and members in the Corporate Defendants. (Datoo Dec. Ex. 1, ¶ 9). The Individual Defendants control the operations of the Corporate Defendants, including, but not limited to, how employees are compensated. (Datoo Dec. Ex. 1, ¶ 9). The Corporate Defendants are managed by the same General Manager, Marco Shalma ("Mr. Shalma"), who is also a part-owner of the Corporate Defendants. (Datoo Dec. Ex. 12, Interrogatory No. 2). The Corporate Defendants regularly share and/or interchange employees, operate one website, have the same menu and prices, utilize the same employment form, and have the same logo, Facebook.com page and Twitter.com handle/moniker. (Datoo Dec. Ex. 1, ¶ 18). In fact, the Corporate Defendants admit to operating as one single enterprise. (Datoo Dec. ¶18; Ex. 2).

**Plaintiff And Other Crepe Makers Were Not Lawfully Compensated For Their Overtime Work**

Plaintiff and other Crepe Makers were overtime non-exempt employees paid on an hourly basis. (Datoo Dec. Ex. 1, ¶ 22; Walker Dec. ¶ 4). However, as described below, Plaintiff and other Crepe Makers were the victims of an unlawful common plan or practice which resulted in their unlawful denial of earned overtime wages.

Prior to the start of each workweek, the Corporate Defendants regularly scheduled Crepe Makers, including Plaintiff, to work at multiple restaurants between five and seven days a week. (Datoo Dec. Ex. 1, ¶ 23). During the course of the workweek, in addition to working their

scheduled hours, the Corporate Defendants routinely directed Crepe Makers, including Plaintiff, to work on days they were not originally scheduled to work. (Datoo Dec. Ex. 1, ¶ 24).

During the course of the workweek, the Corporate Defendants regularly scheduled and/or knowingly permitted Crepe Makers, including Plaintiff, to work at their restaurants in excess of 40 hours per workweek. (Datoo Dec. Ex. 1, ¶ 25). Crepe Makers regularly work 45-65 hours per workweek at the restaurants. (Datoo Dec. Ex. 1, ¶ 25). Plaintiff regularly worked approximately 45-50 hours per workweek at the restaurants. (Datoo Dec. Ex. 1, ¶ 25). Moreover, when Plaintiff first began working for the Corporate Defendants, he asked Mr. Shalma if he could work as many hours as possible so that he could get paid overtime. (Walker Dec. ¶ 5). In response, Mr. Shalma told Plaintiff that the Corporate Defendants "do not pay overtime." (Walker Dec. ¶ 5; Datoo Dec. Ex. 1, ¶ 26).

Consistent with what Mr. Shalma told Plaintiff, and despite scheduling and/or knowingly permitting their non-exempt Crepe Makers to work in excess of 40 hours in a workweek, the Corporate Defendants failed to pay Plaintiff and other Crepe Makers overtime wages for hours worked in excess of 40 hours in a workweek at a rate of one and one-half times their regular rate. (Datoo Dec. Ex. 1, ¶ 26; Walker Dec. ¶ 6). Instead, Plaintiff and other Crepe Makers were paid straight time for all hours worked in excess of 40 hours per workweek. (Datoo Dec. Ex. 1, ¶ 26; Ex. 8; Ex. 10; Walker Dec. ¶¶ 6, 7). Indeed, *inter alia*, Defendants employed a common, unlawful and intentional policy and practice of not aggregating the total number of hours worked by Crepe Makers during each week at all of their restaurants in order to avoid paying Crepe Makers overtime wages. (Datoo Dec. Ex. 1, ¶ 26).

For example, in the work schedule for the seven-day workweek ending on March 11, 2012, Plaintiff, who is listed in the schedule as "Kafele," was scheduled to work at the Upper

West Side Location (labeled on the schedule as "COLUMBUS") on three separate days for a total of 30 hours. (Datoo Dec. Ex. 3). During this same week, Plaintiff was also scheduled to work at the Greenwich Village Location (labeled on the schedule as "BLEECKER") on four separate days and for a total of 43 hours. (Datoo Dec. Ex. 3). Despite working in excess of 40 hours that workweek, Plaintiff did not receive any overtime compensation. (Datoo Dec. Ex. 4; Ex. 5). Rather, Plaintiff received pay at his regular rate of $8.75 for 28 hours worked at the Upper West Side Location between March 5, 2012 and March 11, 2012 (Datoo Dec. Ex. 4) and his regular rate of $8.75 for 28 hours allegedly worked at the Greenwich Village Location between March 7, 2012 and March 13, 2012. (Datoo Dec. Ex. 5).

Moreover, based on the evidence Plaintiff currently possesses, it is clear that many similarly situated Crepe Makers have also been victims of Defendants' unlawful common policy and/or plan to not pay overtime. For example, a Crepe Maker by the name of Rogelio Flores, a former coworker of Plaintiff who is currently employed by the Corporate Defendants and was also regularly assigned to work at the Upper West Side Location and the Greenwich Village Location (Walker Dec. ¶ 7), was unlawfully denied overtime wages for the workweek ending on April 22, 2012. Based on computerized "clock-in/clock-out" records for the week ending April 22, 2012, Mr. Flores worked 67.04 hours at the Upper West Side Location during that week. (Datoo Dec. Ex. 6). It should be noted that based on the schedule for that week, Mr. Flores, who is listed on the schedule as "Roger," was scheduled to work approximately 59.0 hours at the Upper West Side Location. (Datoo Dec. Ex. 7). However, according to payroll records provided by Defendants, Mr. Flores received a paycheck on April 27, 2012 (which can be reasonably inferred to have covered the week ending on April 22, 2012), which compensated him at his regular rate for only <u>40</u> hours of work. (Datoo Dec. Ex. 8, VLC 000021). Thus, based on the

evidence available to Plaintiff at present, Mr. Flores, who is a potential FLSA Collective member, was also subjected to the Corporate Defendants' common policy and/or practice of unlawfully failing to pay Crepe Makers overtime at a rate of one and one-half times the employee's regular rate of pay for all hours worked in excess of 40 in a workweek.[3] In fact, Mr. Flores himself told Plaintiff that he was not paid overtime despite working substantially in excess of 40 hours in a workweek. (Walker Dec. ¶ 7).

Similarly, Crepe Maker Keith Whitney, another former coworker of Plaintiff who admitted to Plaintiff that he was not paid overtime for working in excess of 40 hours in a workweek (Walker Dec. ¶ 7), appears to have also been denied overtime pay for the workweek ending on April 22, 2012. During that week, based on computerized "clock-in/clock-out" records, Mr. Whitney worked at the Upper West Side Location for a total of 43.7 hours. (Datoo Dec. Ex. 6). It should be noted that Mr. Whitney was scheduled to work a total of 41 hours that week at the Upper West Side Location. (Datoo Dec. Ex. 7). However, according to payroll records provided by Defendants, Mr. Whitney was paid on April 27, 2012 at his regular rate for only <u>40</u> hours of work. (Datoo Dec. Ex. 8, VLC0000022).

Furthermore, based on the evidence available to Plaintiff, it appears that the Corporate Defendants' FLSA violations were not limited to the Upper West Side Location and Greenwich Village Location, but extended to the Corporate Defendants' two other Vive La Crepe branches as well. For instance, for the week ending on February 12, 2012, John Westpfal, a Crepe Maker who appears in the schedule as "John," was scheduled to work a combined 46 hours between the

---

[3] It would also appear that Mr. Flores was not compensated for <u>all</u> hours he worked at the minimum wage rate, exposing Defendants to liability under the FLSA's minimum wage provisions. Accordingly, Plaintiff reserves the right to move for conditional certification pursuant to the first claim for relief in the Complaint of an FLSA collective of individuals who were not paid the statutory minimum wage at a later time.

restaurant located at 51 Spring Street (the "Nolita Location"), labeled as "NOLITA" on the schedule, and the restaurant located at 114 University Place (the "Union Square Location"), labeled as "UNIV" on the schedule. (Datoo Dec. Ex. 9). Specifically, Mr. Westpfal was scheduled to work four days for a total of 30.5 hours at the Nolita Location, and two days for a total of 15.5 hours at the Union Square Location. (Datoo Dec. Ex. 9). However, on February 17, 2012, Mr. Westpfal received a payment from the Union Square Location only compensating him at his regular rate for 40 hours. (Datoo Dec. Ex. 10). There is no record that Mr. Westpfal received any payment from the Nolita Location for this workweek. (Datoo Dec. Ex. 11).[4]

**Defendants' Common Policy Or Plan Violated The FLSA**

Plaintiff and all other Crepe Makers working throughout the Corporate Defendants' four restaurants were subjected to the same policies and/or plans of denying them earned overtime compensation. (Datoo Dec. Ex. 1, ¶ 31; Walker Dec. ¶¶ 5-7). By virtue of these company-wide practices affecting all Crepe Makers across the Corporate Defendants' four New York, New York restaurants, Plaintiff and all other current and former Crepe Makers who would comprise the FLSA Collective are similarly situated for purposes of receiving notice of this action.

---

4 It also appears the Corporate Defendants' common unlawful plan and/or practice of denying overtime wages target not only Crepe Makers, but also non-exempt managerial employees. (Datoo Dec. Ex. 13, p. 2, ¶ 2). For instance, according to computerized "clock-in/clock-out" records, Frederick Quimboia, who is otherwise known as "Erick," worked at the Upper West Side Location for the week ending on April 22, 2012 for a total of 70.48 hours. (Datoo Dec. Ex. 6). It should be noted that Mr. Quimboia was scheduled to work 51 hours that week. (Datoo Dec. Ex. 7). However, on April 27, 2012, Mr. Quimboia was only paid for 40 hours. (Datoo Dec. Ex. 8, VLC000022).

## ARGUMENT

### I. CONDITIONAL CERTIFICATION OF THE FLSA COLLECTIVE IS APPROPRIATE

### A. The FLSA's Opt-In Requirements

The FLSA states, in relevant part that:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). In a collective action under Section § 216(b), unlike in a class action pursuant to Fed. R. Civ. P. 23, an employee is not a member of the collective until the employee affirmatively opts-in to the collective action. Id. Thus, until similarly-situated employees file consents to opt-in to this action, the statute of limitations continues to run against them on a daily basis. Id. Therefore, it is critical that similarly-situated employees be afforded notice and an opportunity to opt-in at the outset of the action, as their claims are potentially being reduced and/or extinguished by the passage of time.

The Supreme Court affirmed the importance of potential opt-in plaintiffs receiving timely notice of their potential claims in Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).[5] This case sets forth the requirements for bringing a collective action under the FLSA. The Court observed that a collective action authorized by Section 216(b) "allows . . . plaintiffs the

[5] While the Supreme Court's decision in Hoffman-La Roche involved a collective action under the Age Discrimination in Employment Act ("ADEA"), the analysis applies to FLSA collective actions with equal force because the ADEA specifically adopted the collective action enforcement provisions of the FLSA. See 29 U.S.C. § 626(b); Hoffman v. Sbarro, 982 F. Supp. 249, 261 n.15 (S.D.N.Y. 1997).

advantage of lower individual costs to vindicate their rights by the pooling of resources." Hoffman-LaRoche, 493 U.S. at 170. The Court went on to point out that "[t]hese benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Id.; see also Foster v. Food Emporium, No. 99 CIV 3860 (CM), 2000 WL 1737858, at *3, n.1 (S.D.N.Y. April 26, 2000) ("because of the statute of limitations, potential plaintiffs may be eliminated as each day goes by. For this reason, it is advisable that notice be given as soon as practicable."). Indeed, it is not uncommon for courts to approve expedited notice. See Sbarro, 982 F. Supp. at 262 ("courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management."); see also Lynch v. United Services Auto. Ass'n., 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007).

## B. The Two-Phase Certification Process For FLSA Collective Actions

The Second Circuit has approved a two-step process for district courts to utilize in determining whether to proceed collectively under Section 216(b). See, e.g., Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010). First, at an early stage, the court must make an initial determination limited strictly to whether the named plaintiffs are "similarly situated" to the potential members of the FLSA Collective. Id.; see also Cunningham v. Elec. Data Systems Corp., 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) (citing Lynch, 491 F. Supp. 2d at 368). If the named plaintiff makes a "modest factual showing" that he and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law," the court should facilitate notice to the potential members of the collective. For this reason, the initial phase is

called the "notice stage." Myers, 624 F. 3d at 555 (citing Sbarro, 982 F. Supp. at 261); see also Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 336 (S.D.N.Y. 2010).

It is well established that the burden for demonstrating whether potential plaintiffs are "similarly situated" is very low at the notice stage. See Lynch, 491 F. Supp. 2d at 368; Morales v. Plantworks, Inc., No. 05 Civ. 2349 (DC), 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006) ("The first stage, conditional certification, requires only a 'modest factual showing' based on the 'pleadings and affidavits' that the putative class members were 'victims of a common policy or plan that violated the law."). Plaintiffs merely need to provide "some factual basis from which the court can determine if similarly situated potential plaintiffs exist." Lynch, 491 F. Supp. 2d at 368. At this first step, the court uses a "relatively lenient evidentiary standard to determine whether a collective action is appropriate." Cunningham, 754 F. Supp. 2d at 644 (citing Mentor v. Imperial Parking Systems, Inc., 246 F.R.D. 178, 181 (S.D.N.Y. 2007). "The leniency of this requirement is consistent with the broad remedial purpose of the FLSA." Spicer, 269 F.R.D. at 336 (citing Morales, 2006 WL 278154, at *2).

If the plaintiffs satisfy their burden of showing that "similarly situated" employees exist, the court should conditionally certify the class and order that appropriate notice be given to putative class members to afford them the opportunity to opt-in to the action. See Cunningham, 754 F.Supp.2d at 644; see also Lynch, 491 F. Supp. 2d at 368 (citing Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) ("Once notice is accomplished, the action proceeds as a collective action throughout the discovery process.")).

At the second stage, after a substantial period of discovery has been completed, the defendants may move for "decertification" where the district court will be asked to conduct a more stringent analysis of whether the plaintiffs who have opted-in are in fact "similarly

situated" to the named plaintiffs. See Myers, 624 F.3d at 555. The action may be "decertified" if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice. Id. The second step of the inquiry "utilizes a more stringent factual determination because the court is able to examine whether the actual plaintiffs brought into the case are similarly situated." Cunningham, 754 F. Supp. 2d at 644.

### C. Plaintiff Has Made The Required Showing That He Is Similarly Situated To The Members Of The FLSA Collective

As stated above, to meet the minimal burden required for preliminary certification, Plaintiff must make a "modest factual showing" that he and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." See Myers, 624 F.3d at 555 (citing Sbarro, 982 F. Supp. at 261). This burden may be "satisfied with 'substantial allegations' of a factual nexus between a named plaintiff and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation." Davis v. Abercrombie & Fitch Co., 08 CIV 1859(PKC), 2008 WL 4702840, at 9 (S.D.N.Y. Oct. 23, 2008) (citations omitted); see also Hallissey v. Am. On-line, Inc., No. 99 Civ. 3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members."). Thus, the proper inquiry is whether Plaintiff is similarly-situated with respect to his allegations that the law has been violated, and not whether Plaintiff's job responsibilities are identical in every respect. See Chowdhury v. Duane Reade, Inc., No. 06 CIV 2295 (GEL), 2007 WL 2873929, *5 (S.D.N.Y. Oct. 2, 2007).

In this case, the evidence demonstrates that Crepe Makers and all other persons working in similar capacities employed by the Corporate Defendants are "similarly situated" for FLSA purposes because the Corporate Defendants continually engaged in denying all such employees

full overtime pay. Elements of the Corporate Defendants' pay practices and other policies common to Plaintiff, and those similarly situated to Plaintiff, include:

(i) Plaintiff and other Crepe Makers perform the identical primary job duty of making crepes. (Datoo Dec. Ex. 1, ¶ 20);

(ii) Plaintiff and other Crepe Makers were regularly assigned to work at more than one of the Corporate Defendants' Vive La Crepe restaurants. (Datoo Dec. Ex. 1, ¶ 21; Walker Dec. ¶ 3);

(iii) Plaintiff and other Crepe Makers were non-exempt employees paid on an hourly basis. (Datoo Dec. Ex. 1, ¶ 22; Walker Dec. ¶ 4);

(iv) During the workweek, the Corporate Defendants regularly scheduled and/or knowingly permitted Crepe Makers to work in excess of 40 hours per workweek. (Datoo Dec. Ex. 1, ¶ 25);

(v) Plaintiff and other Crepe Makers across all four restaurants were managed by the same individual - Marco Shalma. (Datoo Dec. Ex. 1, ¶ 18);

(vi) Plaintiff and other Crepe Makers were not paid overtime compensation for overtime hours worked. (Datoo Dec. Ex. 1, ¶ 26; Walker Dec. ¶ 6); and

(vii) The Corporate Defendants did not aggregate the total number of hours worked by Crepe Makers at all of their restaurant locations during each workweek for the purposes of calculating overtime compensation. (Datoo Dec. Ex. 1, ¶ 26).

Accordingly, this Court should conditionally certify the requested FLSA Collective and authorize notice of this action.

## II. COURT-AUTHORIZED NOTICE IS APPROPRIATE IN THIS CASE

In addition to an order conditionally certifying this case as a collective action, Plaintiff also respectfully requests that this Court authorize that notice of this action to be sent to all potential members of the FLSA Collective. While the FLSA does not expressly require the court to authorize such notice, the Second Circuit has recently recognized that district courts "have discretion, in appropriate cases, to implement [§ 216(b) ] by facilitating notice to potential plaintiffs" of the pendency of the action and their opportunity to opt-in as represented plaintiffs.

Myers, 624 F.3d at 554 (citing Hoffmann-La Roche, 493 U.S. at 169). Furthermore, the Second Circuit has held that "it makes more sense, in light of the 'opt-in' provision of § 216 (b) of the Act . . . to read the statute as permitting, rather than prohibiting, notice in appropriate cases." Braunstein v. E. Photographic Laboratories, Inc., 600 F.2d 335, 336 (2d Cir. 1978). Moreover, the Supreme Court has expressed a clear preference for court-administered notice in opt-in actions: "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed." Hoffman-LaRoche, 493 U.S. at 172.

As previously noted, until the absent members of the FLSA Collective file consents to opt-in to this action, the statute of limitations is running against them on a daily basis. See 29 U.S.C. § 216(b). Accordingly, the timing of the notice given to putative members of the FLSA Collective is of great significance. See Foster, 2000 WL 1737858, *3 n.1 ("because of the statute of limitations, potential plaintiffs may be eliminated as each day goes by. For this reason, it is advisable that notice be given as soon as practicable."); Sbarro, 982 F. Supp. at 262 ("courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management."); see also Lynch, 491 F. Supp. 2d at 367.

Equally important, similarly situated employees will remain unaware of the availability of this cost-effective means of enforcing their rights until they receive notice of this action. The primary benefit of collective actions under the FLSA -- namely, the pooling of resources to lower individual costs -- could very well play a decisive role in whether a similarly situated employee chooses to enforce his or her rights under the FLSA. These potential opt-in plaintiffs should be

made aware of this avenue of enforcement as soon as possible so as to advise them of their rights to join this action.

Plaintiff has proposed a Notice of Pendency and Notice of Consent consistent with prior notices routinely approved by courts in the Second Circuit. (Datoo Dec. Ex. 16). Therefore, Plaintiff respectfully requests that this Court approve the attached Notice of Pendency and Notice of Consent, advising all potential opt-in plaintiffs of their right to join this collective action.

## III. EXPEDITED DISCLOSURE OF NAMES AND CONTACT INFORMATION IS APPROPRIATE IN THIS CASE

To provide all potential opt-in plaintiffs with notice of the pendency of this action, Plaintiff requires the names and contact information for those individuals. See Hoffman-La Roche, 493 U.S. at 170 ("The District Court was correct to permit discovery of the names and addresses of the discharged employees."); Lynch, 491 F. Supp. 2d at 371 (explaining that "identification [of similarly situated employees] is necessary so that [plaintiff] can provide them with notice of this action"). Without this information, Plaintiff will be unable to inform other similarly-situated persons of the pendency of this action. Moreover, the FLSA expressly permits a three-year statute of limitations to remedy willful violations of the Act. See 29 U.S.C. § 255(a). As the Second Circuit has explained, "a violation is willful for purposes of the FLSA limitations provision only if the employer knowingly violates or shows reckless disregard for the provisions of the Act." Brock v. Superior Care, Inc., 840 F.2d 1054, 1062 (2d Cir. 1988). While the Corporate Defendants doubtlessly will argue that that their violations were not willful and that notice covering a two-year period is more appropriate, such argument is without merit where the willfulness of a defendant's violations of the Act is pled by a plaintiff, even if disputed by the defendant. See Davis v. Abercrombie & Fitch, 2008 WL 4702840, at *12 ("Courts that have

faced this issue routinely approve a three-year notice period."); McBeth v. Gabrielli Truck Sales, Ltd., 768 F. Supp. 2d 396, 399 (E.D.N.Y. 2011) ("Where willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action." (internal citation omitted)).

Thus, Plaintiff respectfully requests that this Court direct the Corporate Defendants to produce the names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment for all persons employed as Crepe Makers and in any similar position in any of the four restaurants during the FLSA Collective Period.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that this Court: (1) conditionally certify this action as a collective action pursuant to Section 216(b) of the FLSA; (2) approve the proposed Notice of Pendency and the proposed Notice of Consent, and authorize Plaintiff to send notice to all members of the opt-in class; and (3) order Defendants to provide the names, addresses, telephone numbers, email addresses, and dates of employment of all Crepe Makers and any other similarly situated employees that are members of the opt-in class.

Dated: New York, New York
November 13, 2012

Respectfully submitted,

THOMPSON WIGDOR LLP

By: ______________________
Kenneth P. Thompson
Shaffin A. Datoo
Tanvir H. Rahman

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845

Attorneys for Plaintiff