UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KAFELE WALKER, on behalf of himself and :
on behalf of all other similarly-situated persons, :
                                                        :    Civil Action No. 12 Civ. 3712 (RJS)
                    Plaintiff, :
              v. :

VLC NOLITA LLC, VLC UNION SQUARE LLC, :
VLC UPPER WEST LLC, VLC WEST VILLAGE :
LLC, ANDRES MIER Y TERAN, ALFRED MIER :
Y TERAN and CARLOS MIER Y TERAN, :
                    Defendants. :
------------------------------------------------------------x

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND AUTHORIZATION TO SEND NOTICE OF THIS ACTION

THOMPSON WIGDOR LLP

85 Fifth Avenue
New York, New York 10003
Phone: (212) 257-6800
Facsimile: (212) 257-6845

Attorneys for Plaintiff

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................................. ii

**ARGUMENT** ................................................................................................................................ 1

    I.    PLAINTIFF HAS MET HIS MODEST BURDEN OF DEMONSTRATING THAT HE AND MEMBERS OF THE PUTATIVE COLLECTIVE WERE VICTIMS OF DEFENDANTS' UNLAWFUL COMMON POLICY OR PLAN TO NOT PAY OVERTIME ............................................................................. 1

        A. Plaintiff's Claims Are Supported By The Evidence ..................................... 1

        B. Hearsay Evidence Is Regularly Relied Upon By Courts In Connection With Motions For Conditional Certification ................................................. 3

    II.    PLAINTIFF HAS ESTABLISHED THAT HE IS SIMILARLY SITUATED TO THE MEMBERS OF THE PUTATIVE COLLECTIVE ..... 4

    III.    PLAINTIFF AND THE PUTATIVE COLLECTIVE ROUTINELY WORKED MORE THAN 40 HOURS IN A WORKWEEK, BUT WERE NOT COMPENSATED AT THE OVERTIME RATE FOR THOSE HOURS ............................................................................................................. 5

    IV.    PLAINTIFF HAS NOT HAD A FULL AND FAIR OPPORTUNITY TO CONTACT MEMBERS OF THE PUTATIVE COLLECTIVE ...................... 8

    V.    PLAINTIFF'S ANTICIPATED FED. R. CIV. P. 23 MOTION FOR CLASS ACTION CERTIFICATION OF HIS STATE LAW CLAIMS DO NOT IMPACT THIS MOTION FOR CONDITIONAL CERTIFICATION OF HIS FLSA CLAIMS ....................................................... 8

**CONCLUSION** ......................................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**

Alleyne v. Time Moving & Storage Inc.,
    264 F.R.D. 41 (E.D.N.Y. 2010) ............................................................................................. 9

Cohen v. Gerson Lehrman Group, Inc.,
    686 F. Supp. 2d 317 (S.D.N.Y. 2010) .................................................................................. 5

Espinoza v. 953 Assocs. LLC,
    280 F.R.D. 113 (S.D.N.Y. 2011) .......................................................................................... 9

Fasanelli v. Heartland Brewery, Inc.,
    516 F.Supp.2d 317 (S.D.N.Y. 2007) .................................................................................... 4

Luhan v. Cabana Mgmt.,
    No. 10-CV-755, 2011 WL 317984 (E.D.N.Y. Feb. 1, 2011) ............................................... 3

Moore v. Eagle Sanitation,
    276 F.R.D. 54 (E.D.N.Y. 2011) ............................................................................................ 3

Morris v. Affinity Health Plan, Inc.,
    No. 09-CV-1932 (ALC), 2012 WL 1608644 (S.D.N.Y. May 8, 2012) ............................... 9

Neary v. Metro. Prop. & Cas. Ins. Co.,
    517 F. Supp. 2d 606 (D. Conn. 2007) ................................................................................... 5

Pippins v. KPMG LLP,
    No. 11-CV-0377 (CM)(JLC), 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012) ........................ 8, 9

Ramos v. SimplexGrinnell LP,
    796 F.Supp.2d 346 (E.D.N.Y. 2011) .................................................................................... 9

Wal-Mart Stores, Inc. v. Dukes,
    _ U.S. _, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) .............................................................. 9

Winfield v. Citibank, N.A.,
    843 F.Supp.2d 397 (S.D.N.Y. 2012) ............................................................................ 3, 4, 9

Zivali v. AT&T Mobility LLC,
    646 F.Supp.2d 658 (S.D.N.Y. 2009) .................................................................................... 3

## ARGUMENT

### I.

### PLAINTIFF HAS MET HIS MODEST BURDEN OF DEMONSTRATING THAT HE AND MEMBERS OF THE PUTATIVE COLLECTIVE WERE VICTIMS OF DEFENDANTS' UNLAWFUL COMMON POLICY OR PLAN TO NOT PAY OVERTIME

#### A. Plaintiff's Claims Are Supported By The Evidence

Despite the wealth of evidence presented in Plaintiff's moving papers that demonstrate Defendants' implementation of a common policy or plan to deny Crepe Makers and other similarly situated employees payment for all overtime hours worked and/or payment at the premium overtime rate for all hours worked in excess of 40 hours in a workweek in violation of the FLSA, Defendants oddly assert that Plaintiff has presented no evidence that members of the putative collective were not compensated for all time worked. This contention is without merit.

For one, Defendants inaccurately claim that Plaintiff has relied on the use of schedules and pay information for Frederick Quimboa to bolster this motion. In fact, Plaintiff merely mentioned Mr. Quimboa in a footnote to demonstrate that Defendants may also be cheating their admittedly non-exempt management-level employees out of overtime wages. Indeed, Mr. Quimboa, who is listed as a "Shift Manager" on Defendants' employee schedule for the week ending April 22, 2012, appears to have been denied wages for hours he worked that week beyond 40 hours. (Datoo Dec. Ex. 7 and Ex. 8, VLC000022).[1] Plaintiff's footnote reference to Mr. Quimboa was not, contrary to Defendants' tortured contention, relied upon to strengthen Plaintiff's motion.

Further, Defendants' contention that the Court should deem irrelevant Plaintiff's

---

[1] The Declaration of Shaffin A. Datoo, which was previously submitted, is referred to herein as "(Datoo Dec. )."

1

proffered evidence regarding Rogelio Flores' well-documented denial of overtime wages is also without merit. Defendants' moving papers and supporting declaration conveniently state that Mr. Flores and Mr. Quimboa "<u>are</u> employed in supervisory, exempt positions" and could not be considered "similarly-situated" to Plaintiff. (Shalma Dec. ¶ 20) (emphasis added)). Tellingly, however, Defendants fail to inform the Court as to whether Mr. Flores was in an exempt supervisory position during the workweek ending on April 22, 2012, wherein Mr. Flores was scheduled to work 59 hours as a <u>Crepe Maker</u>, "clocked-in" to work for 67.04 hours, but was compensated for only <u>40</u> hours of work. (Datoo Dec. Ex. 6; Ex. 7; Ex. 8, VLC 000021). It is curious why Mr. Flores would appear on the work schedule for the week ending April 22, 2012 under the category of "Crepe Makers," despite the existence of a separate category denoting "Shift Managers," which included Mr. Quimboa (listed therein as "ERICK"). (Datoo Dec. Ex. 7). The only logical explanation for this discrepancy is that Mr. Flores, who personally told Plaintiff that he did not receive overtime from Defendants, was in fact a non-exempt Crepe Maker during this time period and was not paid for all hours worked beyond 40 hours in the workweek ending on April 22, 2012. (Walker Dec. ¶7). The Court should not be swayed by Defendants' attempt to play fast and loose with such facts.

Defendants also quibble with the evidence Plaintiff has put forth concerning Crepe Makers Keith Whitney, who admitted to Plaintiff that he was also not paid overtime, and John Westphal, on the grounds that Plaintiff failed to account for unpaid rest breaks which allegedly would reduce the number of hours Defendants were required to compensate its Crepe Makers and other non-exempt employees. (Walker Dec. ¶7). However, Defendants' contention with respect to their alleged unpaid break policies raise a number of concerns regarding Defendants' wage practices - such as, if Crepe Makers are indeed required to take unpaid meal breaks, why

do they not "clock-out" during their breaks so that Defendants know the exact amount of time their employees work for them, rather than having to resort to estimating such hours based on the assumption that they all took uniform uncompensated rest breaks? Defendants' recordkeeping in this regard, particularly when considered in light of the other evidence put forth by Plaintiff regarding Defendants' unlawful overtime related wage practices and policies, are troubling.[2]

### B. Hearsay Evidence Is Regularly Relied Upon By Courts In Connection With Motions For Conditional Certification

Defendants contend that the hearsay statement in paragraph 7 of Plaintiff's declaration - that Rogelio Flores, Sarai Robles, Kim Tolentino, Saeed Booth, Peter Clarke, Aaron Scouten, Vadim Milter, Jesse Demuth and Keith Whitney told Plaintiff that they were not paid overtime when they worked in excess of forty hours per workweek - is insufficient evidence to demonstrate Defendants' common policy or plan of not paying overtime. However, "[o]n a motion for conditional certification 'courts in this Circuit regularly rely on [hearsay] evidence to determine the propriety of sending a collective action notice.'" Winfield v. Citibank, N.A., 843 F.Supp.2d 397, 402-03 (S.D.N.Y. 2012) (quoting Moore v. Eagle Sanitation, 276 F.R.D. 54, 59 (E.D.N.Y. 2011) (internal quotation marks and citation omitted)); see also Luhan v. Cabana Mgmt., No. 10-CV-755, 2011 WL 317984, at 4 n.9, *6 (E.D.N.Y. Feb. 1, 2011) (noting that "courts frequently consider hearsay in deciding whether to issue class notice" and that striking hearsay statements is "an approach not taken in this district given the 'modest factual showing' required at the notice stage") (citation omitted); Zivali v. AT&T Mobility LLC, 646 F.Supp.2d 658, 662 (S.D.N.Y. 2009) ("Defendants' argument that plaintiffs' declarations are comprised of

---

[2]   With respect to John Westphal, Defendants assert that Plaintiff's failure to produce a cash-register-based punch-clock print out for Mr. Westphal is somehow "telling." This contention is without merit because Defendants have conveniently failed to disclose that they did not produce these documents despite Plaintiff's specific requests for such category of documents, not to mention Defendants' own failure to include these documents in their opposition papers.

3

idiosyncratic, unrepresentative, and conclusory allegations based on impermissible hearsay is of no moment."). This "approach is consistent with the purpose of conditional certification which is only a preliminary determination as to whether there is a sufficient showing to warrant notice being sent to the purported collective class to allow members to opt-in to the lawsuit." Winfield, 843 F.Supp.2d at 403. Moreover, "the Defendant will have another opportunity to object to class certification after discovery." Fasanelli v. Heartland Brewery, Inc., 516 F.Supp.2d 317, 322 (S.D.N.Y. 2007). Accordingly, the aforementioned statement in Plaintiff's declaration, combined with Marco Shalma's admission that Defendants "do not pay overtime," is sufficient to demonstrate that Plaintiff and the putative class were victims of a common policy or plan that violated law. (Walker Dec. ¶5).

## II.

### PLAINTIFF HAS ESTABLISHED THAT HE IS SIMILARLY SITUATED TO MEMBERS OF THE PUTATIVE COLLECTIVE

Defendants attempt to "muddy the waters" by arguing that Plaintiff cannot be similarly-situated to the collective he seeks to represent on the grounds that many of those who would make up the putative collective may have: "work[ed] different hours; [worked] full time; [worked] part time; [ ] only work[ed] for a few months in the summer and never return[ed]; [worked] for longer periods of time, and some [who] demonstrate[d] initiative and dedication and [were] promoted to non-exempt management positions." These are distinctions without a difference. The FLSA is clear – an FLSA non-exempt employee must be paid at the premium overtime rate of one and one-half times their regular rate of pay for all hours worked in a week in excess of 40 hours. Whether the employee is employed for one week, one month, a season, or for years is irrelevant for purposes of determining whether they were subjected to any common company-wide policies or practices of denying overtime.

It is well-established that a person-by-person fact-intensive inquiry is premature at the conditional certification stage. See Neary v. Metro. Prop. & Cas. Ins. Co., 517 F.Supp.2d 606, 621-22 (D. Conn. 2007) (rejecting "[d]efendant's argument that in determining whether its claim of applicability of the administrative exemption is valid, individualized inquiry is necessary"); Lynch v. United Services Automobile Assoc., 491 F.Supp.2d 357, 368 (S.D.N.Y. 2007) ("a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated"); Cohen v. Gerson Lehrman Group, Inc., 686 F.Supp.2d 317, 326 (S.D.N.Y. 2010) ("[a]t [conditional certification] phase, the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations"). The cases Defendants cite for the incorrect proposition that individualized circumstances somehow militate against the granting of conditional certification are not within the Second Circuit, except for one case in the Western District of New York, and all were decided in 2006 or prior.

Further, Defendants' contention that the instant motion should be denied on grounds that Plaintiff seeks to include exempt employees in his proposed collective is also devoid of merit. Plaintiff is not seeking to conditionally certify a collective that includes exempt-managers; Plaintiff is seeking only to conditionally certify a collective of non-exempt Crepe Makers and similarly-situated employees who were not paid overtime by Defendants.

### III.

**PLAINTIFF AND THE PUTATIVE COLLECTIVE ROUTINELY WORKED MORE THAN 40 HOURS IN A WORKWEEK, BUT WERE NOT COMPENSATED AT THE OVERTIME RATE FOR THOSE HOURS**

Defendants self-servingly state that few, if any, of the current and former employees that would make up the putative collective worked more than 40 hours in any workweek. Even

5

assuming this statement is true, which Plaintiff contends it is not, this issue concerns Defendants' exposure to liability, which is not at issue here.

In any event, the fact remains that Marco Shalma, "General Manager of each of the Vive La Crepe restaurants located in New York City," explicitly told Plaintiff that Defendants "do not pay overtime." (Shalma Dec. ¶1; Walker Dec. ¶5). In fact, Mr. Shalma does not even attempt to rebut Plaintiff's allegation. Rather, Mr. Shalma merely states that Crepe Makers or other non-exempt employees who work more than 40 hours in any workweek are compensated at the overtime premium rate. (Shalma Dec. ¶19). Interestingly, Mr. Shalma fails to state whether: (i) Plaintiff was paid overtime during his employment with Defendants; and (ii) whether Defendants' non-exempt employees have always been compensated at the premium overtime rate during the relevant period. Accordingly, Mr. Shalma's silence as to these basic points directly suggests that any policy or plan to pay Crepe Makers at the premium overtime rate is a new policy, likely implemented only after Plaintiff filed suit.

Defendants also incredibly assert that when its employees worked more than 40 hours, they were properly compensated for that time and cite to the examples of 8 Crepe Makers who have allegedly received overtime. Defendants conveniently fail to point out that the earliest example Defendants were able to muster up was from a check dated August 9, 2012, or stated differently, approximately 3 months after Plaintiff filed suit. Defendants did not list even one example of a Crepe Maker who was paid overtime compensation during Plaintiff's employment.

Defendants appear to contend that Plaintiff was mistakenly not paid overtime for the week ending March 11, 2012. This was not a mistake or some clerical error. Plaintiff was scheduled to work 63 hours between two of Defendants' restaurants during the Monday through

6

Sunday workweek ending on Sunday, March 11, 2012.[3] (Datoo Dec. Ex. 3). Assuming, for argument's sake, that Plaintiff took a 45 minute unpaid break on each of the 6 days he worked that week, Plaintiff should have received compensation for 58.50 hours (63 hours – 4.50 hours of unpaid breaks) at the very least, and should have received overtime compensation for 18.50 hours. Instead, in a deliberate effort to avoid paying overtime, Plaintiff was issued paystubs by two different restaurant locations on March 16, 2012 for a total of 56 hours (28 hours by each restaurant) at his regularly hourly rate of $8.75 an hour for all hours worked. (Datoo Dec. Ex. 4 and Ex. 5). Any which way Defendants slice it, Plaintiff worked in excess of 40 hours in that week and was paid only his straight time wages for all of those hours.

In any event, Plaintiff's pay stubs reflect several instances in which he was not paid overtime. For example, for the week ending April 15, 2012 (with a pay date of April 20, 2012), Plaintiff was only paid his straight time wages for 51 hours worked at two restaurants (40 hours at the Bleeker Street location and 11 hours at the 189 Columbus Street location). (Reply Datoo Dec. Ex. 1).[4] For the week ending April 29, 2012 (with a pay date of May 4, 2012), Plaintiff was only paid his straight time wages for 57 hours worked at two restaurants (35 hours at the Bleeker Street location and 22 hours at the 189 Columbus Street location). (Reply Datoo Dec. Ex. 1). Moreover, for the week ending May 6, 2012 (with a pay date of May 11, 2012), Plaintiff was only paid his straight time wages for 54 hours worked at two restaurants (28 hours at the Bleeker

---

[3] In his Declaration, Marco Shalma states that the workweek is from Monday through Sunday. (Shalma Dec. ¶15). This is at odds with the workweek listed on Plaintiff's pay stubs for the Vive La Crepe restaurant located at 300 Bleeker Street, which appears to have a Wednesday through Tuesday workweek. (Reply Datoo Dec. Ex 1). For the purposes of this motion, Plaintiff will assume that Mr. Shalma statement is correct.

[4] The Reply Declaration of Shaffin A. Datoo, submitted herewith, is referred to herein as "(Reply Datoo Dec.)."

7

Street location and 26 hours at the 189 Columbus Street location). (Shalma Dec. ¶15; Reply Datoo Dec. Ex. 1).

IV.

**PLAINTIFF HAS NOT HAD A FULL AND FAIR OPPORTUNITY TO CONTACT MEMBERS OF THE PUTATIVE COLLECTIVE**

Defendants contend that the putative collective is unlikely to assert similar claims because not one person has opted-in to date. This contention is without merit for several reasons. First, Defendants have not provided Plaintiff with contact information of members of the putative collective. Plaintiff, who was employed for approximately 3 months, only has contact information for a few people. Second, Plaintiff was also terminated days after he filed this lawsuit. As such, it is reasonable to infer that many putative collective members are scared to join this suit for fear of retaliation; further bolstering the import of having a Court-Approved Notice sent to putative collective members as soon as possible to inform them that retaliation for participating in this lawsuit is unlawful.

V.

**PLAINTIFF'S ANTICIPATED FED. R. CIV. P. 23 MOTION FOR CLASS ACTION CERTIFICATION OF HIS STATE LAW CLAIMS DO NOT IMPACT THIS MOTION FOR CONDITIONAL CERTIFICATION OF HIS FLSA CLAIMS**

Defendants seem to contend that because Plaintiff is going to be seeking class treatment under Fed. R. Civ. P. 23 for his state law wage and hour claims, questions of "commonality" under Rule 23 would create a "highly individualized inquiry" for each member of the putative FLSA class. This contention, however, is without merit because "Federal Rule of Civil Procedure 23's requirements for class certification do not apply to the certification of a collective action under the FLSA." Pippins v. KPMG LLP, No. 11-CV-0377 (CM)(JLC), 2012 WL 19379,

at *7 (S.D.N.Y. Jan. 3, 2012); see Winfield, 843 F.Supp.2d at 409 ("Courts in this Circuit have repeatedly emphasized that the more exacting Rule 23 requirements are not applicable to conditional certification motions."); Espinoza v. 953 Assocs. LLC, 280 F.R.D. 113, 121 (S.D.N.Y. 2011) ("The Rule 23 requirements do not apply to a court's approval of a collective action under the FLSA. Plaintiffs need not show . . . commonality . . . for collective action certification."). The Supreme Court's decision in Wal-Mart Stores, Inc. v. Dukes, _ U.S. _, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), which was decided before all of the aforementioned cases, does not mandate a different result. "The fact that Rule 23 standards are not applied when conditionally certifying section 216(a) overtime classes means that the Supreme Court's recent seminal class action decision in *Wal-Mart Stores, Inc. v. Dukes*, is inapplicable in the FLSA context." Pippins, 2012 WL 19379, at *7 (internal citation omitted); see Morris v. Affinity Health Plan, Inc., No. 09-CV-1932 (ALC), 2012 WL 1608644, at *2 (S.D.N.Y. May 8, 2012) ("The weight of authority rejects the argument that *Dukes* bars certification in wage and hour cases.").

Moreover, Defendants' contention that determining what day each Crepe Maker worked, what type of work he/she performed and for what amount of time "would require an individual trial" confuses liability with damages. See Espinoza, 280 F.R.D. at 127 ("Defendants' argument that plaintiffs' 'off-the-clock' claims would require this Court to determine liability on an individualized basis confuses liability with damages."); Ramos v. SimplexGrinnell LP, 796 F.Supp.2d 346, 359 (E.D.N.Y. 2011) ("[N]umerous courts have found that wage claims are especially suited to class litigation – perhaps the most perfect questions for class treatment – despite differences in hours worked, wages paid, and wage due."); Alleyne v. Time Moving & Storage Inc., 264 F.R.D. 41, 49 (E.D.N.Y. 2010) ("differences among class members as to the

number of hours worked, the precise work they did and the amount of pay they received concern the amount of damages to which any individual class member might be entitled, not the amenability of their claims to Rule 23 certification."). Accordingly, Plaintiff's state law claims will not complicate this action such as to preclude conditional certification under the FLSA.

## CONCLUSION

For these reasons and those set forth in Plaintiff's moving papers, Plaintiff respectfully requests that this Court: (1) conditionally certify this action as a collective action pursuant to Section 216(b) of the FLSA; (2) approve the proposed Notice of Pendency and the proposed Notice of Consent, and authorize Plaintiff to send notice to all members of the opt-in class; and (3) order Defendants to provide the names, addresses, telephone numbers, email addresses, and dates of employment of all Crepe Makers and any other similarly situated employees that are members of the opt-in class.

Dated: New York, New York
       December 7, 2012

                                    Respectfully submitted,

                                    THOMPSON WIGDOR LLP

                              By:   _____
                                    Kenneth P. Thompson
                                    Shaffin A. Datoo
                                    Tanvir H. Rahman

                                    85 Fifth Avenue
                                    New York, NY 10003
                                    Telephone: (212) 257-6800
                                    Facsimile: (212) 257-6845

                                    Attorneys for Plaintiff